IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BILLIE L. CAMPBELL, individually and as
Administratrix of the Estate of Dale E. Campbell,

          Plaintiff,

v.                                                 CIVIL ACTION NO. 3:10-1341

ASHLAND CREDIT UNION, a foreign corporation,
and SOUTHERN FINANCIAL INSURANCE
COMPANY, INC., foreign corporation,

          Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Billie L. Campbell's Motion to Amend Complaint [doc. no. 30], Defendant Southern Financial Insurance Company, Inc.'s (hereinafter Southern Financial) Motion to Dismiss under Rule 12 or, in the Alternative, to Transfer to the Eastern District of Kentucky [doc. no. 16], Plaintiff's Motion to Strike Affidavit of Craig Hart [doc. no. 42], and Southern Financial's Motion to Modify Scheduling Order [doc. no. 86]. For the following reasons, the Court **GRANTS** Plaintiff's Motion to Amend and **GRANTS** Southern Financial's motion to the extent the Court agrees that personal jurisdiction does not exist and it requests a transfer to the Eastern District of Kentucky. However, the Court **DENIES** the motion to the extent that Southern Financial asks to be dismissed from this action. In addition, the Court **DENIES AS MOOT** Southern Financial's Motion to Modify this Court's Scheduling Order, and the Court **DENIES AS MOOT** Plaintiff's Motion to Strike the Affidavit of Craig Hart.

# I.
# PROCEDURAL AND
# FACTUAL HISTORY

On November 10, 2010, Plaintiff, in both her personal capacity and as the personal representative of the Estate of Dale E. Campbell, her late husband, filed a Verified Complaint and Request for Preliminary Injunction in the Circuit Court of Wayne County, West Virginia, against Defendant Ashland Credit Union (hereinafter Ashland Credit) and Southern Financial. In her Complaint, Plaintiff alleges that she is a resident of Wayne County, and she and her husband were members of Ashland Credit, which conducts business within the county. On or about August 12, 2002, Plaintiff states that she and her husband entered into a home equity line of credit with Ashland Credit, with a revolving line of credit. The loan was secured by a deed of trust on property located in Wayne County. Plaintiff asserts that Ashland Credit represented to her and her husband that the loan was insured and, if either her or husband were to die, the loan would be paid. Plaintiff states there were several draws on the loan and, with each draw, Ashland Credit represented the loan was insured. On April 14, 2010, Plaintiff's husband died.

Following the death, Plaintiff filed a claim for benefits with Ashland Credit and Southern Financial, which issued the insurance policy. Plaintiff asserts that Ashland Credit told Plaintiff to stop making payments on the loan because it was insured. However, Southern Financial denied coverage, and Plaintiff claims that Ashland Credit now has threatened foreclosure on her house. As a result, Plaintiff filed this action alleging claims for breach of contract, violations of the West Virginia Unfair Trade Practices Act, common law bad faith, reasonable expectations, and negligent representations and failure to properly procure insurance. Plaintiff also stated a claim for

a temporary injunction prohibiting Defendants from attempting to collect on the loan and/or foreclosing on her house.

On November 30, 2010, Defendants removed the action to this Court based upon diversity of jurisdiction, as the amount in controversy exceeds $75,0000 and as Ashland Credit is incorporated and has its principal place of business in Kentucky and Southern Financial is incorporated in Kentucky with its principal place of business in Florida. Following removal, on January 3, 2011, Southern Financial moved to dismiss for lack of personal jurisdiction and/or for lack of venue or, in the alternative, to transfer the action to the Eastern District of Kentucky. As part of its argument, Southern Financial argues that the Complaint does not contain sufficient facts with respect to jurisdiction and venue to satisfy the constitutional requirements of minimum contacts over it. Plaintiff not only filed a Response to the motion, but also filed a Motion to Amend the Complaint to add allegations regarding jurisdiction and venue and to correct other errors.

Upon briefing of those motions and Plaintiff's Motion to Strike an affidavit submitted by Southern Financial, the parties jointly moved to withhold ruling to allow the parties to conduct discovery and then convert the motion to dismiss into one for summary judgment by allowing the Court to consider matters outside the pleadings. The Court granted the motion to withhold rulings, and the parties recently submitted supplemental pleadings and exhibits. With briefing now complete, the Court rules upon the pending motions.

## II.
## MOTION TO AMEND

Plaintiff moves to amend her Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. Rule 15(a)(2) permits amendment of a complaint after a responsive pleading has been filed "with the opposing party's written consent or the court's leave" and leave should be freely given "when justice so requires." In the proposed Amended Complaint, Plaintiff alleges Southern Financial is in the business of selling insurance to West Virginia residents and that Southern Financial "has engaged in the 'transaction of insurance,' as that term is defined in West Virginia Code § 33-44-3(p) by issuing or delivering in West Virginia certificates or contracts of insurance to residents of this state or to persons authorized to do business in West Virginia." *Proposed Amended Complaint*, at ¶ 5. Plaintiff also alleges that Ashland Credit is and was an agent of Southern Financial, and when draws were made on the equity line, certificates of insurance were mailed to her in West Virginia. Given that Plaintiff moved to amend her Complaint very early in this litigation and these new allegations are the focus of the parties' arguments below, the Court finds that allowing Plaintiff to amend serves the interests of justice in this case. Therefore, for good cause shown, the Court **GRANTS** Plaintiff's motion for leave to amend the Complaint.

## III.
## MOTION TO DISMISS

### A.
### Standard of Review

In this case, the parties agreed to conduct discovery and to have this Court treat Southern Financial's motion to dismiss as a motion for summary judgment. However, as Southern Financial has moved to dismiss pursuant to Rule 12(b)(2) and (3) for lack of personal jurisdiction and venue, as opposed to Rule 12(b)(6) for failing to state a claim, the Court need not convert the

-4-

motion into one for summary judgment. *Wilson-Cook Medical, Inc. v. Wilson*, 942 F.2d 247, 252 (4th Cir.1991) ("[c]onverting a motion to dismiss into a motion for summary judgment, of course, applies only to a motion made pursuant to Rule 12(b)(6)"); *Tetrev v. Pride Intern., Inc.*, 444 F. Supp.2d 524, 528-29 (D. S.C. 2006) (holding that a court may consider evidence beyond the face of the complaint in evaluating a 12(b)(3) motion without converting the motion into one for summary judgment (citations omitted)); *Rich Food Services, Inc. v. Rich Plan Corp.*, No. 5:99-CV-677-BR, 2001 WL 36210598, at *9 n.2 (E.D. N.C. 2001) (stating "Rule 12(b) does not impose a restriction upon trial court in considering matters outside the pleadings in ruling on a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction").

In considering a Rule 12(b)(2) motion, "the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 005) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)). In situations such as this one, where the court resolves the issue on the basis of "motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* (quoting *Combs*, 886 F.2d at 676; *also citing In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997)). In considering the documents submitted, the court "'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *Id.* (quoting *Combs*, 886 F.2d at 676 (other citation omitted)). This court, however, "need not 'credit conclusory allegations or draw farfetched

inferences.'" *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (unpublished) (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir.1994)).  In addition, a plaintiff "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist.*" IMO Industries, Inc. v. Seim S.R.L.*, 3:05–CV–420–MU, 2006 WL 3780422, at *1 (W.D.N.C. December 20, 2006).  "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction . . . ." *Id*.

**B.**
**Discussion**

In her Supplemental Response to Southern Financial's original motion, Plaintiff argues that personal jurisdiction exists over Southern Financial in West Virginia because of its activities within the State.  In determining whether a federal court may exercise personal jurisdiction over a defendant, a federal court must look to see if such jurisdiction is authorized by the long-arm statute of the State in which it sits and whether the exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Fed. R. Civ. P.* 4(k)(1)(A).[1]  "Because the West Virginia long-arm statute is coextensive with the full reach of due process*, see Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987), it is unnecessary . . . to go through the normal two-step formula for determining the existence

---

[1]Rule 4(k)(1)(A) provides: "**Territorial Limits of Effective Service.  (1) In General.** Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: **(A)** who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" *Fed. R. Civ. P.* 4(k)(1)(A).

of personal jurisdiction . . . ." *Owens–Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 627–28 (4th Cir. 1997) (citations omitted). "Rather, the statutory inquiry necessarily merges with the Constitutional inquiry." *Id.* Therefore, the Court's inquiry in this case focuses on whether exercising personal jurisdiction over Southern Financial is consistent with the Due Process of the United States Constitution.

In *J. McIntyre Machinery, LTD v. Nicastro*, 131 S. Ct. 2780 (2011), the Supreme Court recently reiterated that "[a] court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 131 S. Ct. at 2787 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)) (internal quotation marks omitted).[2] Generally, for such power to be exercised, the defendant must act in such a way that it "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws . . . .'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A defendant may submit to the general jurisdiction of a particular State in a number of ways, including consent, presence in a State, and citizenship or domicile within the State. *Id.*;

---

[2]Fairness is determined by balancing several factors, including "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.*" Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987). A court "must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. 286, 292 (1980) (citations omitted).

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011) ; *see also ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) ("To establish general jurisdiction over the defendant, the defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." (citation omitted)). However, when a defendant lives and operates primarily outside of a State, a State's authority over that defendant may be limited to "disputes that 'arise out of or are connected with the activities within the state.'" *Id.* (quoting *International Shoe Co.*, 326 U.S. at 319). Where purposeful availment exists, a defendant submits to the otherwise foreign sovereign's judicial power "to the extent that power is exercised in connection with the defendant's activities touching on the State. In other words, submission through contact with and activity directed at a sovereign may justify specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'" *Id.* at 2787-88 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8 (1984) (other citation omitted)); *see also ALS Scan, Inc.,* 293 F.3d at 712 (stating for specific jurisdiction to exist, a court must "consider (1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable'" (citations omitted)).

In this case, Plaintiff argues Southern Financial satisfies the minimum contact requirement by its own actions and those of its purported agent, Ashland Credit, because it purposefully availed itself of the privilege of conducting activities here. First, she contends that Southern Financial insured West Virginia residents, including Plaintiff and her husband. Second,

she claims that certificates of insurance were mailed to her and her husband in West Virginia through its agent, Ashland Credit. Third, she submits that numerous loans and the procurement of insurance were obtained by Plaintiff and her husband over the phone from West Virginia. Fourth, she asserts Ashland Credit, as an agent of Southern Financial, represented to Plaintiff and her husband that the loan would be insured. Fifth, she states the property secured by the loan is located in West Virginia. Plaintiff argues these activities clearly meet the "minimum contacts" requirement to establish a prima facie case of personal jurisdiction over Southern Financial.

To support these claims, Plaintiff points to the deposition testimony of three Ashland Credit employees. The first employee, Shannon Wiley, testified that Ashland Credit has approximately a couple hundred liens on property located in West Virginia and that loan documents, including certificates of insurance, are "almost always mailed" to members. *Deposition of Shannon Wiley*, at 66. Ernie Garvin and Josh Wyatt, other Ashland Credit employees, testified similarly to Ms. Wiley with respect to the fact that Ashland Credit issues a number of loans on West Virginia property. Likewise, Plaintiff was deposed and stated she would call the credit union to draw or advance on her line of credit and, thereafter, the loan documents and certificates of insurance would be mailed to her in West Virginia. Given this evidence, Plaintiff argues she has more than sufficient evidence to support jurisdiction over Southern Financial.

Southern Financial responds by arguing that Plaintiff has failed to demonstrate any pre-claim activity by it in West Virginia; rather, she relies upon contacts made by Ashland Credit and argues that Ashland Credit is Southern Financial's agent. Southern Financial asserts, however,

that Ashland Credit is not its agent. Specifically, Southern Financial states Ashland Credit does not take applications for insurance from individual borrowers, does not charge premiums to borrowers, and does not determine the eligibility of borrowers. In addition, Southern Financial asserts the policy is a contract between Southern Financial and Ashland Credit for group life insurance coverage to pay on unpaid loan balances held by the credit union when a qualifying member dies. It is not a contract with individual members of the credit union. Moreover, Southern Financial asserts there is no evidence it otherwise conducts any business or affairs within West Virginia.

In support of her agency theory, Plaintiff cites *Warden v. Bank of Mingo*, 341 S.E.2d 679 (W. Va. 1986). In *Warden*, "[t]he Bank of Mingo maintained a group creditor life insurance policy issued by Appalachian Life Insurance Company . . . . Through this policy the bank offered life and health insurance to its loan customers and received 40% of each premium as a commission." 341 S.E.2d at 681. Debtors contracted directly with the bank to obtain insurance coverage and paid premiums for the insurance. Under the policy, "[i]t was the debtors' health and lives and not the debts that were insured." *Id*. at 683 (footnote omitted). The bank merely became the beneficiary of the policy. In addition, it was the bank that solicited debtors to purchase the insurance, negotiated contracts, and issued the certificates of insurance. Under these circumstances, the West Virginia Supreme Court concluded the bank was acting as an insurance agent under both statute and common law. *Id.* (quoting West Virginia Code § 33-1-12 (1982), which defines an insurance agent as "'an individual appointed by an insurer to *solicit, negotiate, effect,* or countersign insurance contracts in its behalf'" (emphasis supplied in *Warden*), and recognizing that under common law an agent is "a person authorized by another to act for him").

In reaching its holding, the West Virginia Supreme Court distinguished *Warden* from its earlier decision in *South Branch Valley Nat'l Bank v. Williams*, 155 S.E.2d 845 (W. Va. 1967). In *South Branch*, the bank obtained a creditors group life insurance policy to insure the lives of its borrowers so that their unpaid obligations to the bank would be paid in the event of death. 155 S.E.2d at 846-47. After an issue regarding life insurance coverage arose, the insurance company argued the bank did not act as its agent with respect to the policy. *Id.* at 848. The West Virginia Supreme Court agreed and found that the contract of insurance was between the insurer and the bank, which was the policy holder and insured. *Id.* The insurer never entered into a contract with the deceased debtor. In fact, the insurer did not even know the names of bank's debtors. *Id.* at 848-49.

In the case at bar, Plaintiff argues her situation is more analogous to *Warden* because she and her husband received certificates of insurance and certificates of insurance were not issued in *South Branch*. Although Ashland Credit admits it provided certificates of insurance to the decedent, such certificates are required to be sent to debtors under both West Virginia and Kentucky law. *See* W. Va. Code § 33-14-19;[3] KRS § 304.19-070(1).[4] Ashland Credit's mere compliance with

---

[3]West Virginia Code § 33-14-19 provides:

> In the case of a group life policy issued to a creditor to insure debtors of such creditor, there shall be a provision in such policy that the insurer will furnish to the policyholder for delivery to each debtor insured under the policy a certificate or statement of coverage form which shall contain a statement that the life of the debtor is insured under the policy and that any death benefit paid thereunder by reason of his death

(continued...)

-11-

statutory requirements does not make it an agent of Southern Financial. In addition, the Court finds the facts of *Warden* are distinguishable because the evidence presented in this case, unlike the bank in *Warden*, indicates Ashland Credit did not charge any premiums to debtors for coverage, it did not sell insurance to debtors, and it did not get any commissions by maintaining the group insurance. Clearly, Ashland Credit entered into a contract with Southern Financial to insure its unpaid loan balances. Ashland Credit was not acting as Southern Financial's agent by purchasing such coverage.

In considering the evidence in the light most favorable to Plaintiff, the Court finds she simply has not set forth sufficient evidence to find that an agency relationship exists between Southern Financial and Ashland Credit. As Plaintiff has failed to show that an agency relationship exists, Plaintiff's argument that this Court has personal jurisdiction over Southern Financial by virtue of the activities of Ashland Credit also must fail.

Likewise, there is insufficient evidence to show that Southern Financial had minimum contacts with West Virginia by virtue of its own actions. The group insurance policy at issue here was between Southern Financial and Ashland Credit, and it was delivered in Kentucky. The mere

---

[3](...continued)
shall be applied to reduce or extinguish the indebtedness.

W. Va. Code § 33-14-19.

[4]Section 304.19-070 of Kentucky's Code likewise provides, in part: "All credit life insurance . . . shall be evidenced by an individual policy, or in the case of group insurance by a certificate of insurance, which individual policy or group certificate shall be delivered to the debtor." KRS § 304.19-070(1), in part.

fact Ashland Credit had members in West Virginia and issued loans on property located in West Virginia does not make Southern Financial, as the insurer of the group policy, subject to jurisdiction in West Virginia. Indeed, the certificate of insurance specifically states that the group policy is issued to the credit union, all claims must be made by the credit union, and any proceeds due under the policy are paid to the credit union.[5] As indicated by Southern Financial, Plaintiff simply has no evidence to make a prima facie showing that Southern Financial has had minimum contacts with West Virginia sufficient to support personal jurisdiction here.[6]

---

[5] The certificate of insurance also provides that the value of the policy for an individual member is not more than $50,000 and the actual insured amount "is equal to the insured balance of . . . [the member's] loan on the date of . . . [the member's] death. [The insurer] . . . also will pay up to 6 months unpaid loan interest to that date." *Certificate of Insurance*, at 1.

[6] Likewise, the Court finds no merit Plaintiff's allegation that Southern Financial is subject to personal jurisdiction by virtue of West Virginia Code § 33-44-3(p) by issuing or delivering certificates of insurance to West Virginia residents. First, as previously stated, West Virginia long-arm statute is coextensive with the full reach of due process and, as discussed above, personal jurisdiction must be consistent with due process. Second, West Virginia Code § 33-44-3(p) defines a "transaction of insurance" in West Virginia, in part, as: "(5) The issuance or delivery in this state of certificates or contacts of insurance to residents of this state or to persons authorized to do business in this state[.]" W. Va. Code § 33-44-3(p)(5). However, the very next section provides that Article 33

> does not apply to . . . (iii) transactions in this state involving group life insurance . . . providing coverage under policies that are recognized under articles fourteen [covering, in part, group life insurance policies issued to credit unions] and sixteen, respectively, of this chapter where: (1) The master policy of such groups was lawfully issued and delivered in and pursuant to the laws of a state in which the insurer was authorized to do an insurance business, to a group organized for purposes other than the procurement of insurance, and where the policyholder is domiciled or otherwise has a bona fide situs; and (2) except for group annuities, the insurer

(continued...)

Although the Court finds that it does not have personal jurisdiction over Southern Financial, the Court declines to dismiss Southern Financial from this matter. Pursuant to 28 U.S.C. § 1406(a),[7] this Court has discretion to transfer this action if it is in "the interest of justice" and despite the fact the Court does not have personal jurisdiction over Southern Financial. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 277 (4th Cir. 2005) (stating "Section 1406(a) has been construed to permit transfers where personal jurisdiction is lacking in the transferor court, but would be available in an alternative forum" (citation omitted)). In this case, the Court finds the interests of justice warrant transferring this matter to the Eastern District of Kentucky where jurisdiction exists as to all the parties and there is no impediment to a decision on the merits of all the claims. Therefore, the Court **DENIES** Southern Financial's motion to be dismissed from this action, but **GRANTS** its alternative motion to transfer this case to the Eastern District of Kentucky.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Amend [doc. no. 30], and **GRANTS** Southern Financial's motion to the extent the Court finds that personal jurisdiction does not exist and it requests a transfer to the Eastern District of Kentucky

---

[6](...continued)
           complies with section thirty-five, article six of this
           chapter."

W. Va. Code § 33-44-4(d)(iii), in part. As the policy at issue in this case is a group life insurance issued and delivered to a credit union in Kentucky and there are no allegations such contract was unlawful, Article 33 does not seem to apply. *See also* W. Va. Code § 31D-15-1501.

[7]Section 1406(a) states, in full: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

[doc. no. 16]. However, the Court **DENIES** the motion to the extent that Southern Financial asks to be dismissed from this action [doc. no. 16]. In addition, the Court **DENIES AS MOOT** Southern Financial's Motion to Modify this Court's Scheduling Order [doc. no. 86] and, as the Court did not rely upon the Affidavit of Craig Hart in reaching its decision, the Court **DENIES AS MOOT** Plaintiff's Motion to Strike his affidavit [doc. no. 42]. The Court further **DIRECTS** the Clerk of this Court to transfer this action the to Eastern District of Kentucky.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: September 30, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE